UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

PAULA LEDBETTER,

    Plaintiff,

v.

                                      08-3106

MCLEAN COUNTY SHERIFF MIKE EMERY,
JAIL SUPT. TOM PHARES,
CORRECTIONAL OFFICER ROBERT HALL,

    Defendants.

**<u>Order</u>**

Before the Court is the motion for summary judgment by Defendants Emery and Phares on the grounds that the plaintiff failed to exhaust her administrative remedies before filing this suit. For the reasons below, the motion is granted. However, Defendant Hall remains in the case, for further development of the record with regard to whether Hall is equitably estopped from asserting exhaustion as a defense.

*Summary Judgment Standard*

A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);Fed. R. Civ. P.56(c). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." See Fed. R. Civ. P. 56(e).

*Allegations*

The plaintiff was incarcerated in McLean County Jail in April 2007 and working as a hall worker. Defendant Hall, a correctional officer at the Jail, was one of the plaintiff's supervisors. Here are the plaintiff's allegations verbatim:

> [Hall] seemed interest in my case trying to give me sound advice. A week later
> he told me he noticed how shapely I was while I'd been sleeping. It threw me off

but I didn't respond.  I would talk over him when he'd say things sometimes.  I'd loosen up and try to act like it was nothing.  He asked me did I want him to stop talking like that.  I said yes.  A week or so later we were talking and he mentioned how he'd put me in different positions sexually.  He asked me if I knew about the cameras.  Where they were and weren't.  He mentioned the closet where the mop is and the work release storage area.  He asked me to mop the work release storage room.  So, as I'm mopping he walks toward me reaching for my face as if to kiss me.  I rejected him.  He walked out and said nothing.  The next time he worked he apologized.

Days later he asked to see my breasts but I said no.  He said he could tell I had tear shaped breasts.  Embarrassed I just laughed it off.  I felt uncomfortable but I didn't say anything because I needed to get away from the room.  Away from the arguing and loudness. So I endured it.  Regretting it.  Telling no one.  The last incident was when he stood at the counter and pulled out his penis twice that day, asking me to touch his penis.  But I said no.  He's talked about his sex life, oral sex and the last officer involved in a sexual incident didn't handle it right. . . . He [saw] me getting dressed and came back past and stood there watching. . . . Another incident, I needed paperwork to be given to my family at a visit.. . . He told me I owed him for getting it to them. . .Cleaning, he's looked down my shirt.  He asked to take a picture on his phone of me.  He begged.  I said no.  He's shown me weight-lifting women in a porn video on the computer.  He asked have I ever had a dream about him and officer Boyd.  I said, No!  He wanted to feel me up in the closet in front of the women's pods, but I said no.  I thought he'd be someone to confide in.  He ended up [preying on] me.

The plaintiff filed this case in April 2008. [1]

*Analysis on Exhaustion*

The Prison Litigation Reform Act requires an inmate to exhaust available administrative remedies before filing a § 1983 lawsuit.  42 U.S.C. § 1997e(a)("[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted."); *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Perez v. Wisconsin Dept of Corrections*, 182 F.3d 532, 535-38 (7th Cir. 1999). Exhaustion means properly and timely taking each step in the established administrative process.  *Pozo v. McCaughtry*, 286 F.3d 1022 (7th Cir. 2002).  "Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is hauled into federal court,' and it discourages disregard of [the agency's] procedures."  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion "gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors. This is particularly important in relation to state corrections systems because it is 'difficult to

---

[1] Another case against Hall involving similar allegations is pending before this court. *Adams v. Emery et al.*, 08-3105.

imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons.'" *Id.* at 94 (citation omitted). However, only *available* remedies require exhaustion. "[W]hen prison officials prevent inmates from using the administrative process . . . , the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

The undisputed facts show that the Jail has a grievance procedure: inmates can file an "inmate request form" with the appropriate designated person of unit. (Mclean County Detention Facility Inmate Information and Orientation Handbook, Section XII, d/e 26, Exhibit A, attached to Affidavit of Defendant Allen). It is not clear exactly to whom the plaintiff would have filed her grievance, but presumably it would be the "inmate services bureau" (which handled "personal problems") or the watch commander (who handled "concerns about day to day operations of the Facility"). Inmates may appeal the response to the operations supervisor, then to the assistant superintendent, then to the superintendent, then finally to the Sheriff. *Id.* The inmate request form requires the inmate to specify the person or unit with which she "request[s] an interview", and there is a space to state the reason for the request. *Id.*, Ex. B.

The plaintiff admits that she did not file a grievance. (Complaint p. 4). The plaintiff seems to assert in her response that she did not know about the grievance procedure, but she does not put into dispute that the handbook is given to each inmate and is readily available in the common areas.

The plaintiff also asserts in her response that inmate request forms "can be picked up and read by any officer. The use of the inmate request form to complain about conduct of staff can cause retaliation since there is no secure way to submit the form to manag[e]ment." She also alleges in her complaint that she did not file a grievance because:

> I was in fear that he (officer Hall) had the authority to make a drastic change toward my case. I was also overwhelmed by the situation I was in. I had no family to confide in directly in the state. I was trying to deal with one situation @ a time . . .
>
> I know officers stand together. I knew they wouldn't believe me. I wasn't sure who to trust. I'm on an emotional low with my circumstances. So, I didn't know where to turn. I was also afraid of the repercussions towards me from the officers. I knew I was in a no win situation, by myself. Although I mentioned it to Officer Boyd² I still felt fear of my case being affected. I asked him not to say a word. He said (Hall) that he had connects [sic] everywhere. He could make things happen with cases. It happened before and he still has his job. So I kept my mouth shut.

Threats and retaliation by prison staff can render administrative remedies unavailable to inmates. In *Kaba v. Stepp*, 458 F.3d 678 (7th Cir. 2006), the plaintiff proffered evidence showing

---

²Boyd is not named as a defendant.

that, while an inmate, his case manager had threatened the plaintiff's life if the plaintiff filed a grievance or complained to officials. The case manager warned the plaintiff that he would not get a transfer if he went to the warden or associate warden, and also told the plaintiff not to talk to the warden/associate warden or ask for grievance forms. Officials refused to give the plaintiff grievance forms unless the plaintiff pre-disclosed the subject of the grievance, and would not give him forms if he planned to file grievances against them. After the plaintiff complained to the warden, the case manager solicited other inmates to attack the plaintiff. The plaintiff also complained to a captain, who had told him that if he filed a grievance he would be shipped to Puerto Rico, where he would get "'beat[en] up with [a] stick.'" 458 F.3d at 683. The warden told the plaintiff that if he filed a grievance that no one would be sent to investigate. (These facts were set forth in the light favorable to the plaintiff, as the procedural posture of the case required). Ultimately, the plaintiff was beaten in his cell by other inmates, which resulted in the plaintiff's transfer to another prison for medical care, and the case manager was taken off the unit. The Seventh Circuit in *Kaba* reversed the dismissal for failure to exhaust, finding that too many unanswered questions remained, including, "At what point did the prison officials' misconduct, if there was any, rise to the level so as to prevent a grievance from being filed?" 458 F.3d at 686. On remand, the case eventually settled. *Kaba v. Stepp*, 01-150 (d/e 287, stipulation of dismissal filed 4/24/09)(retrieved from PACER on June 18, 2009).

Here, however, it is not clear what Hall said to the plaintiff to discourage her from filing a grievance. It appears from the complaint that Hall (or Boyd, it is not clear) may have told the plaintiff that he had connections and could affect her criminal case adversely if she told anyone. At this point, the court will draw that inference. However, in the court's view, that inference, along with the plaintiff's belief that no one would believe her, and her belief that officers would stand together and retaliate against her, is not enough to render the plaintiff's administrative remedies unavailable. Unlike *Kaba*, there is no suggestion here that anyone else besides Hall (and perhaps Boyd) were pressuring the plaintiff to keep quiet. In *Kaba*, high ranking officials-- the warden, a captain, and the internal investigator-- were allegedly aware of the threats, yet they did nothing and warned the plaintiff that they would take action against the plaintiff if he filed a grievance–and their positions allowed the inference that they had the ability to do so. Here, in contrast, the plaintiff admits that she made no attempt to tell any authorities about Hall's assault, either by writing an inmate request form or otherwise. There is no hint that Hall would have had anything to do with handling the plaintiff's grievance, that the persons who would have handled her inmate request form were in cahoots with Hall, or that any of the defendants would have protected Hall had the plaintiff reported Hall's conduct. There is no evidence that Hall had any ability to sway the grievance process in his favor or had any sway in the running of the jail, despite his alleged boast of "connections." In *Kaba,* the plaintiff arguably had good reason to believe that any further complaining would jeopardize his safety, because there were not only threats, but also action making good on those threats. Here, there is no evidence that Hall or anyone else took affirmative steps to prevent the plaintiff from filing a grievance, such as refusing to give her an inmate request form or soliciting inmates to assault her in order to keep her quiet as in *Kaba*. Though it is not clear exactly to whom the plaintiff would have given her grievance, there is no evidence that Hall would have had any opportunity to see the grievance or intervene in the grievance procedure. There is no evidence that the plaintiff could not have taken her grievance to a higher ranking staff member. In short, the plaintiff's mistrust of the grievance procedure and of all the prison staff to handle her grievance are not supported by facts in the

record.

In the court's view, the plaintiff's vague fears and Hall's statements would not deter a person of "ordinary firmness" from filing an inmate request form to report Hall's sexual harassment. *See Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004). To find otherwise would make it too easy to avoid the exhaustion requirement. Because the plaintiff did not avail herself of her administrative remedies, the defendants (other than Hall) were deprived of an opportunity to take corrective action before the plaintiff repaired to federal court. That is exactly what the PLRA's exhaustion requirement seeks to prevent.

In sum, then, the court finds that the plaintiff did have available administrative remedies and that she failed to exhaust them before filing this case.[3]

That ends the case for all the defendants, except for Defendant Hall. Defendant Hall is proceeding *pro se* and has not raised the affirmative defense of lack of exhaustion. However, the defense is so obvious that the court believes fairness requires the defense be considered as to Hall, even if he has not raised it. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002)(as with any affirmative defense, dismissal on the pleadings for failure to exhaust is appropriate if it is "apparent from the complaint itself" and "unmistakable" that exhaustion did not occur).

The court's conclusion that the plaintiff had available remedies to exhaust does not necessarily mean that her case against Hall must be dismissed. In *Kaba*, the Seventh Circuit noted that it has "explicitly avoided deciding whether equitable estoppel applied in [the PLRA] context." 458 F.3d 678 (citing circuits that have found equitable estoppel to apply). This might be a case where the question cannot be avoided. That is, Hall's sexual harassment, coupled with his statements, could equitably stop him from raising the affirmative defense of lack of exhaustion, even though the case will be dismissed for lack of exhaustion as to the remaining defendants.

Factual issues regarding the defense of exhaustion of administrative remedies under the PLRA are questions for the court, not the jury, to decide. *Pavey v. Conley*, 544 F.3d 739, 741-742 (7th Cir. 2008). Assuming for the time being that an equitable estoppel argument is viable in the PLRA context, the court cannot decide on this undeveloped record whether the facts in this case warrant equitable estoppel. There are no affidavits from Hall or the plaintiff, and the question may be one of credibility in any event. Accordingly, the court will permit additional discovery and hold a hearing on exhaustion and the equitable estoppel issue. *Pavey*, 544 F.3d at 742. If the court finds that Hall is equitably estopped from asserting an exhaustion defense, this case will proceed to a jury trial against Hall.

---

[3]The plaintiff also fails to state a claim against Defendants Emery and Phares, because no inference arises that they were personally responsible for Hall's sexual harassment (i.e., that they were personally aware that Hall presented a substantial risk of sexually harassing inmates). However, the plaintiff would have been given an opportunity to amend the complaint if this were the grounds for dismissal.

IT IS THEREFORE ORDERED THAT:

1) The motion for summary judgment by Emery and Phares is granted (d/e 23).

2) An evidentiary hearing is scheduled for October 30, 2009 at 9:00 a.m. on whether Defendant Hall is equitably estopped from asserting the defense of failure to exhaust administrative remedies.  The plaintiff and Defendant Hall shall appear in person before the Court in Urbana, 201 South Vine Street.  The clerk is directed to issue a writ to secure the plaintiff's presence at the hearing.

3) Discovery is open on the issues relating to equitable estoppel (some of which may overlap with the merits of the case, *see Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). Discovery on these issues closes September 30, 2009.  Written discovery must be served on a party at least 30 days before the discovery deadline.  Discovery requests are not filed with the court, unless there is a dispute regarding such discovery.  *See* CDIL-LR 26.3.  Motions to compel discovery must be accompanied by the relevant portions of the discovery request and the response.  Additionally, except for good cause shown, motions to compel must be filed within 14 days of receiving an unsatisfactory response to a timely discovery request.

4) The IDOC website shows that the plaintiff is currently incarcerated in Decatur Correctional Center, but she has not filed a change of address.  The clerk is directed to change the plaintiff's address to the Decatur Correctional Center.  The plaintiff is warned that, in the future, she must inform the court of any change in address, or her case may be dismissed.

Entered this 26th  Day of June, 2009.

**s\Harold A. Baker**

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE